No. 18,456.

H. GORDON HOWARD *v.* JOSEPH D. HESTER, Conservator, etc.
(338 P. [2d] 106)

Decided April 13, 1959.    Rehearing denied May 4, 1959.

256

Mr. H. Gordon Howard, pro se and for other plaintiffs in error.

Mr. Howard E. Erickson, Mr. Wayne D. Williams, for defendant in error.

*En Banc.*

Mr. Chief Justice Knauss delivered the opinion of the Court.

The parties to this writ of error appear in reverse order of their appearance in the trial court. We will refer to them as they there appeared, or by name. H. Gordon Howard and Gladys Iola Howard, sometimes known as Gladys Harp Howard, are husband and wife. At the time this action was instituted Mary E. Hannum, a mental incompetent, was eighty-five years of age. On March 12, 1957, she was adjudged a mental incompetent incapable, unassisted, of taking care of herself or her property. By order of the Denver county court Joseph

D. Hester was appointed conservator of Mrs. Hannum's estate.

On March 19, 1957, the conservator instituted an action to have surrendered and cancelled several documents hereinafter mentioned, together with the cancellation of a promissory note in the sum of $250 executed by Mrs. Hannum in favor of Mrs. Howard, and sought to recover the sum of $1,000 allegedly delivered to defendants on March 11, 1957. The entire action was based on the incapacity of Mrs. Hannum to transact business and as a result of "urgent demands" and undue influence allegedly exercised upon her by H. Gordon Howard.

By way of answer it was alleged that prior to the institution of the action the several documents, except the promissory note, had been cancelled, released and quit claimed by the defendants who denied receipt of the $1,000. By way of counterclaim Mrs. Howard alleged that on March 11, 1957, Mrs. Hannum made, executed and delivered her cognovit promissory note in the sum of $250 payable to Mrs. Howard ten days after its date and demanded judgment on said note. Issue was joined and trial had to the court, resulting in findings and judgment in favor of plaintiff and against H. Gordon Howard in the sum of $1,000 and cancellation of the $250 note held by Mrs. Howard. From these judgments defendants bring the case here on writ of error.

For reversal it is urged (1) That the trial court erred in permitting Mrs. Hannum to testify in the action; (2) That the evidence upon which the $1,000 judgment was predicated was "founded only on the Court's personal feeling"; (3) That the court's finding that the "cognovit note given to Mrs. Gladys Howard * * * was without consideration was an abuse of discretion."

The record discloses that about February 6th or 7th, 1957, Mr. Howard visited Mrs. Hannum at her home, 1121 Josephine Street, Denver, Colorado. As a result of that interview, apparently on February 11, 1957, an "exclusive and irrevocable" contract was entered into be-

tween Mr. Howard, doing business as Denco Realty Co., and Mrs. Hannum, granting the right to sell Mrs. Hannum's apartment house consisting of six apartments, for $25,000, the exclusive agency to run for 240 days. In the event Howard found a purchaser for the property he was to receive a commission of five per cent. This agreement offered and received in evidence has appended to it a list of the rentals produced by the property, totalling $345 per month.

On February 16, 1957, an agreement was entered into whereby Mrs. Hannum granted Howard the right to collect the rents for said property.

Another exhibit dated February 11, 1957, signed by Mrs. Hannum, made Howard her attorney "in all matters."

On February 15, 1957, a lease and option to purchase, for a period of ten years, was executed by Mrs. Hannum in favor of Mr. Howard. The monthly rental was specified as $150 and the option purchase price was fixed at $10,000, payable $500 in cash and the balance $9,500 at the rate of $160 per month including interest at four per cent per annum.

The record discloses that Mrs. Hannum, personally and through her agents, protested to Mr. Howard she would not be bound by these several writings, and on March 11, 1957, the day before she was adjudged a mental incompetent, an "agreement to compromise dispute" was executed by Mr. Howard and Mrs. Hannum whereby she agreed to pay Howard $10 and he in turn would quitclaim any interest he had in her property. On the same day he executed a quitclaim deed to her property and Mrs. Hannum executed a $250 cognovit note.

On March 15, 1957, the record discloses that Mrs. Hannum executed a ten-year lease on her apartment house and furniture therein to Mrs. Howard, the rental being stipulated as $150 per month. On April 23, 1957, Mrs. Howard surrendered this lease.

The main controversy arises over the transactions between Mrs. Hannum and the Howards on March 11, 1957. It is admitted that on that date Mrs. Hannum had a savings account in a local bank amounting to exactly one thousand dollars. After the quitclaim deed above mentioned was executed by Mr. Howard, he and Mrs. Howard accompanied Mrs. Hannum to the bank in an automobile driven by Mr. Howard. At the Bank Mrs. Hannum signed a withdrawal slip for her one thousand dollars, closing her account, and received that amount in cash. Mr. Howard testified that he did not enter the Bank with Mrs. Hannum, although he admitted taking her to the door of the institution. A bank clerk testified that a man standing near Mrs. Hannum stated that Mrs. Hannum wanted cash rather than a cashier's check for her account, but the clerk could not state that the man was Mr. Howard.

Mrs. Hannum testified that Mr. Howard took the one thousand dollars, which testimony was denied by him. Later on the same day the Howards deposited in another Denver Bank the sum of $1,100 in cash. Howard testified that this was "corn money" held by himself and his wife and on that day deposited in their account.

A handwriting expert testified that the withdrawal slip for $1,000, signed by Mrs. Hannum, was in the handwriting of Mr. Howard. It is manifest, even to a nonexpert, that the body of the withdrawal slip was not written by Mrs. Hannum.

Mrs. Hannum was adjudged a mental incompetent under C.R.S. '53, 71-1-1, which reads:

" * * * shall be construed to mean any person who, though not insane, is by reason of old age, disease, weakness of mind, feebleness of mind, or from any other cause, incapable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

Mrs. Hannum was not incompetent to testify in the

action concerning her dealings with Mr. Howard, under C.R.S. '53, 153-1-6. In *Tubbs v. Hilliard,* 104 Colo. 164, 89 P. (2d) 535, a mental incompetent was permitted to testify and this action was sustained upon review.

■ Every person of unsound mind is not incompetent to testify as a witness. Mrs. Hannum was presented as a witness, subject to the same scrutiny and cross-examination as any other person so offered. The matter of permitting an aged person such as Mrs. Hannum to testify rests largely in the trial court's discretion, and its determination will not be disturbed in the absence of a clear abuse of discretion.

It was the function of the trial court to evaluate Mrs. Hannum's testimony in the light of all the admitted facts. The Howards were in no position to prevent a full disclosure of the facts by insisting that Mrs. Hannum could not testify. True, she was old, perhaps erratic and forgetful, and a conservator of her estate had been appointed. These facts alone did not afford a shield for the Howards.

■ The applicable rule is well stated in 97 C.J.S. 446: "The competency of a mentally immature or deranged witness has been said to present questions very closely relating to those involved in the matter of the credibility of a witness. A witness should not be debarred from testifying on the ground of mental incapacity unless the proof of such disqualification is clear and conclusive." Again on page 447 we find: " * * * if the witness has the capacity to observe, recollect, and communicate he is competent, and his mental deficiency is considered only in so far as it affects the weight to be given his testimony." The mere fact that an individual has been adjudicated a feeble-minded person does not disqualify him as a witness. *People v. Lambersky,* 410 Ill. 451, 102 N.E. (2d) 326.

Considering the real basis of the findings of the trial court it is significant that Mr. Howard testified with reference to his dealings with Mrs. Hannum on March

11, 1957, as follows: "I was beginning to realize she was clear off her reason." One of Mr. Howard's witnesses who was called in to witness the signature of Mrs. Hannum to a document, testified: "I remembered one thing — at the time she seemed extremely old to be doing that kind of work." Howard also testified that on March 11, 1957, he "realized she wasn't mentally sound" and "that when I began to realize she was kind of crazy" and "clear off her reason." It may be observed that the one thousand dollars in cash plus the note for two hundred and fifty dollars totals twelve hundred and fifty dollars, the exact amount of commission Howard was to receive had he sold the property under the original listing entered into just thirty days prior to March 11, 1957.

We need not review all the evidence in this case. Suffice it to say that an able and impartial judge heard the evidence and concluded that this aged woman had been imposed upon and that the cognovit note for two hundred fifty dollars executed by her to Mrs. Howard was without consideration. All this was sustained by competent evidence, and fully supports the judgment entered, as above recited.

Lawyers and real estate men stand in a confidential relation to their clients and principals, and extreme care must be exercised by them to see that their transactions bear the searching light of fair and aboveboard dealing. This is especially true when dealing with aged persons. On competent evidence the trial court resolved the issues in favor of the plaintiff and it is idle to assert on review of a record such as here presented that the conclusions of the trial judge were "based on his own feelings" or an "abuse of discretion."

The judgment is affirmed.