## No. 21039.

### Sylvester Lee Garrison *v.* The People of the State of Colorado.
(408 P.2d 60)

Decided November 1, 1965. Rehearing denied December 13, 1965.

MELLMAN, MELLMAN and THORN, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John E. Bush, Assistant, for defendant in error.

*En Banc.*

Mr. Chief Justice Pringle delivered the opinion of the Court.

Plaintiff in error, Sylvester Lee Garrison, will be referred to as the defendant, or by name.

Garrison was charged with first degree murder, convicted and sentenced to death. This Court affirmed the judgment and the death sentence. *Garrison v. The People,* 147 Colo. 385, 364 P.2d 197. Thereafter, a petition was filed under the provisions of C.R.S. 1963, 39-8-4, alleging that the defendant had become insane subsequent to his conviction and was therefore entitled to have his execution stayed until his recovery. A jury trial resulted in a verdict that defendant was sane. This verdict was reversed on appeal and the matter remanded for a new trial. *Garrison v. The People,* 151 Colo. 388, 378 P.2d 401. On retrial, the jury again returned a verdict finding the defendant sane. Judgment was entered upon the verdict, and from this judgment Garrison now brings writ of error. Since defendant's assignments of error concern specific points which arose at the trial and do not concern the evidence as a whole, a statement of the evidentiary facts is not necessary.

The defendant raises five arguments for our consideration: (1) It was error for the court to refuse to permit Dr. J. P. Hilton to testify that his opinion with respect to defendant's insanity was confirmed by the records of Denver General Hospital. (2) The court erred in failing to strike Dr. McDonald's opinion that the defendant was sane. (3) The court erred in refusing permission for Dr. Hannum to testify in regard to certain records of Denver General Hospital. (4) The court erred in re-

jecting as evidence the Denver General Hospital records which pertain to certain stays of the defendant at such hospital. (5) The court improperly ruled that Herman Garrison, defendant's brother, was not competent to testify.

I.

 Dr. Hilton testified in behalf of defendant. When asked for his opinion regarding defendant's mental condition, he replied:

"In my opinion, based on my examination, *and based on confirmation of records which I examined* at Denver General Hospital * * *" (Emphasis ours.)

That portion of Dr. Hilton's testimony, stating that his opinion was confirmed by the hospital's records, was stricken. Dr. Hilton then proceeded to testify at great length that in his opinion the defendant was insane under the tests set forth in C.R.S. 1963, 39-8-4. The trial court very properly struck that portion of the testimony wherein Dr. Hilton attempted to show that the Denver General Hospital records confirmed his opinion. The situation here is almost identical to that in *Carter v. The People,* 119 Colo. 342, 204 P.2d 147, wherein we held such testimony inadmissible. The authors of the hospital record were not called as witnesses, and testimony by Dr. Hilton which tended to show they concurred in his opinion was clearly hearsay. As is pointed out in 5 *Wigmore on Evidence* (3d ed. 1940), § 1364, hearsay is "that rule which prohibits the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it." Wigmore's assertion is peculiarly applicable here where the defendant attempted to bring in the conclusions and opinions of other doctors who were not present at the trial.

Moreover, these records in and of themselves were not admissible for the purpose of showing the mental

state of the defendant. This point will be developed later on in our opinion. Dr. Hilton could not bolster his opinion by restating the conclusions which were contained in the hospital records which were themselves not admissible. To permit him to do so would thereby bring to the jury's attention the conclusions which they normally would not be permitted to consider in the reports themselves.

II.

Dr. McDonald testified on behalf of the people that, in his opinion, the defendant was sane. Defendant argues that Dr. McDonald's opinion should have been excluded. This argument is based upon defendant's conclusion that Dr. McDonald's opinion was based upon a Dr. Hahn's psychological examination; a review of the county records, which included photostatic copies of the hospital records, and two brain wave examinations performed by another doctor. The record does not support defendant's argument. On cross-examination, Dr. McDonald consistently stated that he formed his opinion concerning the defendant's mental condition from his own personal examination and observation and was not influenced by information which was before him from any source other than his own investigation.

We have repeatedly held that a doctor is not disqualified to express his opinion concerning the sanity of a defendant merely because he had some information from a source outside his own examination if his opinion was not in any manner based on that information. *Skeels v. The People*, 145 Colo. 281, 358 P.2d 605; *Silliman v. The People*, 114 Colo. 130, 162 P.2d 793. The trial court properly admitted Dr. McDonald's opinion as to the sanity of Garrison.

The defendant also contends that the court erred in denying his request to further cross-examine Dr. McDonald. Defendant felt that such further examination would prove that Dr. McDonald's opinion had not been made independently of the information which he

had before him. The granting or denial of a request to further cross-examination is within the discretion of the trial court. *Hammil v. The People,* 145 Colo. 577, 361 P.2d 117; *Archina v. The People,* 135 Colo. 8, 307 P.2d 1083. We find no abuse of discretion here in light of the extensive cross-examination which counsel did conduct and the doctor's consistent insistence that his opinion was based solely on his examination of the defendant.

III.

Defendant contends that the trial court improperly restricted the direct examination of Dr. Hannum. The questioning in issue here centered around an attempt by the defendant to lay a foundation for admission of Exhibit F-2, which is the Denver General Hospital record of Garrison's stay at that hospital for the period of July 28, 1952 to August 14, 1952. The record clearly shows that Dr. Hannum was permitted to testify as to any facts of which he had personal knowledge. The real question then raised by the objection is whether the court acted properly in rejecting Exhibit F-2, which the defendant attempted to get into evidence through Dr. Hannum's testimony.

Both Exhibits F-2 and F-3 constitute the Denver General Hospital records of Garrison's stay at that hospital for the periods of July 28, 1952 to August 14, 1952 and February 4, 1953 to March 15, 1953. The trial court rejected these exhibits as inadmissible hearsay. Defendant contends that both exhibits are independently admissible in their entirety as a business or public record. We cannot agree.

We first turn our attention to Exhibit F-2. Dr. Hannum identified the exhibit as representing the records he made while he attended Garrison during the latter's stay at Denver General Hospital. Dr. Hannum testified that the history sheet was prepared by him. However, his testimony also reveals that part of the information contained therein was obtained from third persons, and

the opinions in the exhibit containing Dr. Hannum's diagnosis or opinion of defendant's mental condition was based on information and the results of laboratory tests which were not within his personal knowledge. These doctors who made those tests and gave the information which appears on the report were not available for cross-examination and their statements were, of course, hearsay in this proceeding.

Dr. Hannum's own testimony established that few of the entries in the exhibit were within his personal knowledge and made personally by him. An expert witness is not permitted to give an opinion of sanity based upon information obtained from third persons who have not testified. *Ingles v. The People,* 90 Colo. 51, 6 P.2d 455. It follows, then, that Exhibit F-2 itself was inadmissible hearsay. One cannot use opinions and information gleaned from sources other than his own knowledge, and then seek to make his opinion admissible in evidence because these sources happen to be hospital records kept in the regular course of business. We point out that Dr. Hannum was permitted to testify as to any opinion he had based on his own knowledge.

Turning our attention to Exhibit F-3, we find the exhibit objectionable for the same reasons as F-2. The diagnosis of Dr. Middleton, contained in this exhibit, presented the defendant as "sociopathic, personality disturbance, anti-social reaction, with psychotic episodes." However, defendant failed to establish that the few facts contained in the exhibit were within Dr. Middleton's personal knowledge and recorded personally by him. Nor did defendant establish that Dr. Middleton's diagnosis was based upon his examination of the defendant and upon facts within his personal knowledge. Exhibit F-3 failed to qualify for admission into evidence and was properly rejected as hearsay. *Ingles v. The People, supra.*

IV.

The court acted properly in rejecting Herman Garrison as a witness.

C.R.S. 1963, 154-1-6, provides:

"(1) (a) The following persons shall not be witnesses:

"(b) Those who are of unsound mind at the time of their production for examination."

It is apparent from the record that the witness did not have sufficient mental capacity to appreciate the nature and obligation of the oath. The matter of permitting a mental incompetent to testify rests largely in the discretion of the trial court. This determination will not be disturbed in the absence of a clear abuse of discretion. *Howard v. Hester*, 139 Colo. 255, 338 P.2d 106, *Wilkinson v. People*, 86 Colo. 406, 282 Pac. 257. We find no such abuse here. In any event, counsel made no statement as to what he offered to prove by the witness, and we certainly cannot determine that it was prejudicial error to refuse to permit a witness to testify when we are not advised as to the materiality or relevancy of the evidence which would be elicited from the witness.

Apparently counsel's purpose was to prove Garrison's insanity by having the court advise the jury that Garrison's brother was incompetent to testify. We approve the trial court's refusal to give an instruction which would in effect place some evidentiary weight on the trial court's refusal to permit Garrison's brother to testify.

The judgment is affirmed, and it is ordered that the same be executed during the week commencing on midnight, Saturday, January 22, 1966.