647 P.2d 1206 (1982)
The PEOPLE of the State of Colorado, John F. Healy, District Attorney, Fifth Judicial District, and W. Terry Ruckriegle, Assistant District Attorney, Clear Creek County, Petitioners,
v.
The DISTRICT COURT OF the FIFTH JUDICIAL DISTRICT In and For the COUNTY OF CLEAR CREEK, State of Colorado, and The Honorable William L. Jones, one of the Judges thereof, Respondents.
No. 82SA23.
Supreme Court of Colorado, En Banc.
June 21, 1982.
Rehearing Denied July 26, 1982.
*1207 John F. Healy, Dist. Atty., W. Terry Ruckriegle, Asst. Dist. Atty., Georgetown, for petitioners.
Stewart H. Brown, Vail, for respondents.
LOHR, Justice.
The People brought this original proceeding to challenge an order of the Clear Creek County District Court granting the motion of the defendant, Wayne Harold Buterbaugh, to suppress the videotape deposition of Kennette Ann Willmore. The trial court concluded that the deposition should be suppressed because Willmore was not a competent witness at the time the deposition was taken. We issued a rule to show cause, but now hold that the trial court's ruling was proper and so discharge the rule.

I.
The record in this proceeding reveals the following facts. In December 1980 and January 1981 Buterbaugh and Willmore were living in an isolated mountain cabin located in Clear Creek County, Colorado. In the last week of December or the first week of January, Buterbaugh and Willmore were visited by David Downer, an acquaintance of Buterbaugh. At the prompting of Downer, the three individuals undressed and frolicked in a nearby creek. After *1208 returning to the cabin, Willmore engaged in sexual intercourse with both men. Downer then began to taunt and tease Buterbaugh by threatening to take Willmore away from him, and an altercation followed during which a shotgun held by Buterbaugh discharged, killing Downer. Buterbaugh and Willmore dragged the body outside, cremated it, and then fled.
After traveling throughout the west during the next few months, Buterbaugh and Willmore arrived in Oregon in the spring of 1981. Still troubled by the Downer incident, Willmore sought out the Oregon State Police and told her story. Following a preliminary investigation corroborating Willmore's revelations, Buterbaugh and Willmore were placed under arrest. Buterbaugh was charged with first-degree murder, section 18-3-102, C.R.S.1973, and Willmore was charged as an accessory to the crime, section 18-8-105(1), (2), C.R.S.1973.
The district attorney subsequently applied for a grant of immunity for Willmore in exchange for her testimony against Buterbaugh, and the application was granted. The charges against Willmore were later dismissed.
Fearing that Willmore might be unavailable when Buterbaugh was ultimately brought to trial, the district attorney moved for leave to take Willmore's deposition, and the deposition was taken and recorded on videotape on July 8, 1981.
Several weeks before the deposition was taken, Willmore was interviewed while under hypnosis by a Denver police officer acting at the request of the Clear Creek County Sheriff's Office. The interview was recorded on audiotape but not on videotape. The hypnotic session consisted of an extensive review of the events leading up to and following Downer's death.
On August 10, 1981, Buterbaugh filed a motion for appointment of a psychiatrist to examine Willmore for the purpose of assessing her competency to testify at Buterbaugh's trial. The motion was granted and Dr. Lawrence Stross was designated as the psychiatrist.
On January 5, 1982, the People filed a motion for continuance of Buterbaugh's trial, originally scheduled to commence on January 18, 1982, because Willmore had left the jurisdiction and could not be located. On January 6, 1982, Buterbaugh filed a motion to suppress Willmore's videotape deposition on the basis that she was incompetent at the time the deposition was taken. Subsequently, a hearing was held.
The only witness testifying at the hearing was Dr. Stross. He stated that, in his medical opinion, Willmore was of unsound mind at the time of the videotape deposition. Stross testified that his opinion was based upon his conclusion that Willmore was unable to recall the events surrounding Downer's death in a "truthful, accurate way." He further stated that Willmore "cannot distinguish what she remembers from what she imagined happened." Stross testified that Willmore's condition at the time of the deposition could be traced to (1) her general tiredness resulting from the prolonged questioning, (2) her traumatic neurosis caused by experiencing the highly stressful event of Downer's death, and the resulting repression of the event from her conscious awareness, and (3) an exacerbation of her repression and the consequent amnesia because of the hypnotic interview conducted shortly before her deposition.
With respect to the hypnotic interview, Stross testified that he did not believe it had been employed as a therapeutic technique designed to enable Willmore to deal with the overwhelming emotional reaction that was disturbing her mental balance, and that, as a consequence, the hypnotic interview was psychologically harmful to Willmore and had further destabilized her mental balance. Stross testified that Willmore's unstable condition and the harmful effect of the hypnotic interview were illustrated by Willmore's ability to recall the events surrounding Downer's death in substantially greater detail while under hypnosis than later at her deposition. He also pointed to Willmore's inability to verify her hypnotic session account of the incident at the time of her deposition, despite her statement that she remembered basically everything *1209 she had said while hypnotized, as further evidence of her unsound mind with respect to the event. Stross additionally noted Willmore's statement that she remembered less of the event every time that she reviewed it. He testified that this was contrary to the generally observed psychological phenomenon that repetition results in enhancement of memory.
Stross further testified that he based his opinion upon his review of: the videotape of the Willmore deposition and a transcript of that deposition; the audiotape and a transcript of the hypnotic interview; a transcript of Buterbaugh's preliminary hearing, where Willmore had appeared as a witness; a transcript of an interview of Willmore by the Oregon State Police; and various other materials.
On cross-examination, Stross testified that he could not assess the relative importance of the three factorstiredness, traumatic neurosis, and improper hypnotic treatmentin causing Willmore's psychological disability at the time of the deposition. Stross conceded that a personal examination of Willmore would have been a desirable supplement to the materials reviewed as a basis for his opinion. Stross also stated that he spent approximately 4 hours reviewing the available materials before reaching his conclusions.
At the end of the hearing, the court granted the defendant's motion to suppress and the state's motion for a continuance pending Willmore's return. The trial court later entered a written order, which stated that Willmore was of unsound mind with respect to the Downer incident and, consequently, was precluded from testifying by section 13-90-106(1)(a), C.R.S.1973. The court found that Willmore was unable to recall crucial matters or to communicate such matters to those conducting her examination. The court further found that in giving her deposition Willmore refused, or was unable, to disclose matters that were demonstrably within her knowledge on prior occasions, and presumably within her knowledge at the time of the deposition. Based on this finding, the court concluded that use of the deposition against the defendant at trial would violate his constitutional right of cross-examination, and in support of that proposition cited U.S.Const. amends. V, VI, and XIV, and Colo.Const. Art. II, §§ 16 and 17.
The People contend that the trial court erred: (1) because Dr. Stross was not qualified as an expert and because, even if his expertise was sufficient, there was an insufficient foundation for his opinion; and (2) because, even if Stross' opinion was properly admitted, the trial court abused its discretion in relying upon this opinion and in issuing its suppression order without personally reviewing the videotape. The People also challenge the trial court's conclusion that use of the Willmore deposition against the defendant at trial would violate Buterbaugh's constitutional right of cross-examination. We address these arguments in turn.

II.

A.
At the suppression hearing the prosecution stipulated to Dr. Stross' qualifications as an expert in the field of psychiatry. However, it contended in the trial court and now contends on appeal that Stross was not qualified as an expert in forensic hypnosis, and that such expertise was necessary to support his testimony concerning the mental state of Willmore. We find the prosecution's argument unpersuasive.
The guidelines for use of expert testimony are now set forth in CRE 702 as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The determination of whether a witness is qualified to render an expert opinion is committed to the discretion of the trial court, and will not be disturbed on review unless that discretion is abused. E.g., Baird *1210 v. Power Rental Equipment, Inc., 191 Colo. 319, 552 P.2d 494 (1976); McCune v. People, 179 Colo. 262, 499 P.2d 1184 (1972); Stork v. People, 175 Colo. 324, 488 P.2d 76 (1971).
Stross' qualifications as a psychiatrist were undisputed. Stross testified that he had been involved with hypnosis for 23 years and forensic hypnosis for over 15 years. He also stated that he had been involved in a number of previous court cases where hypnosis was used to determine the defendant's state of mind at the time of the crime or to refresh the memory of an eyewitness to the crime. Stross further testified that he had published several articles on hypnosis and that there is no distinctive specialty of forensic hypnosis and no procedure for board certification as a specialist in this area. Presented with this uncontradicted testimony, the trial court was fully justified in concluding that Stross was qualified to give his expert opinion on Willmore's mental state at the time of the deposition, including the effect on Willmore of the earlier hypnotic interview. The prosecution's argument to the contrary is not well taken.
The prosecution also asserts that there was an insufficient foundation for Stross' opinion because Stross was unable to examine Willmore personally and because Stross assertedly relied upon the defendant's brief in reaching his conclusions. We disagree.
The prosecution's first contention raises two issues: (1) whether the material relied upon by Stross in forming his opinion was a proper basis for that opinion; and (2) whether that material, without supplementation by a personal examination, provided a sufficient basis for Stross' opinion.
The first inquiry turns on the permissible sources of information an expert may consult in forming his opinion. Some of our earlier cases suggest that a psychiatrist's assessment of the mental competence of a defendant or a witness must be based upon a personal examination of the person assessed, rather than on reports or records of examinations conducted by or observations made by others. See Garrison v. People, 158 Colo. 348, 408 P.2d 60 (1965); Skeels v. People, 145 Colo. 281, 358 P.2d 605 (1961); Silliman v. People, 114 Colo. 130, 162 P.2d 793 (1945). However, the permissible bases of an expert's opinion are now prescribed by CRE 703, effective July 1, 1980. It provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
The prosecution does not contend that a psychiatrist could not reasonably base his assessment of a witness' competence on the type of materials reviewed by Stross, and we do not believe that such a contention would be persuasive. See State v. Hurd, 173 N.J.Super. 333, 414 A.2d 291 (1980). Moreover, we would be reluctant to reach a result that precluded expert psychiatric testimony based upon such materials. If use of such foundation materials were forbidden, a defendant would be severely disadvantaged in his attempt to challenge the mental competency of a witness whose deposition is to be used at a trial because the witness is no longer available to testify. Such a result is neither required nor desirable, and we conclude that the materials reviewed by Stross constituted a permissible basis for his opinion.
We also conclude that those materials provided a sufficient foundation for Stross' opinion. On this question we believe that the trial court must be allowed to exercise its discretion, and that it cannot be said here that the materials reviewed by Stross were insufficient, as a matter of law, to establish a foundation for Stross' testimony. Stross testified that he listened to the audiotape of Willmore's hypnotic interview and reviewed portions of that tape which were of particular interest approximately ten times. Stross also testified that he listened to segments of the videotape of Willmore's deposition, viewed a portion of that tape, and reviewed the transcript of *1211 the deposition in full. In addition, Stross reviewed a transcript of Buterbaugh's preliminary hearing, where Willmore appeared as a witness for the prosecution; a transcript of the interrogation of Willmore by the Oregon State Police; the statement made by Willmore to her Oregon attorney; and various police reports prepared in connection with the incident.
The prosecution also attacks the admissibility of Stross' expert opinion because it was assertedly based upon that portion of the defendant's brief outlining the "conflicts and disparities" between Willmore's testimony at the deposition and her statements at the hypnosis session. However, review of the record reveals that Stross used the abstract of Willmore's deposition testimony and of statements under hypnosis contained in the defendant's brief only to refresh his recollection of the conflicts and as a convenient shorthand reference to the points at which Willmore's deposition testimony and statements under hypnosis diverged. While an expert's opinion cannot be based upon the opinions of others, whether expert or lay, Garrison v. People, supra; O'Brien v. Wallace, 137 Colo. 253, 324 P.2d 1028 (1958), that simply is not what occurred here. Review of Stross' testimony reveals that his opinion was based upon his independent examination of the available materials. The conflicts between Willmore's deposition testimony and her statements under hypnosis formed only a part of the basis for Stross' conclusions, and his reference to the defendant's brief was not for the purpose of determining, in the first instance, the facts supporting his conclusions, and did not constitute reliance upon the opinions or conclusions of counsel.

B.
The prosecution also contends that the trial court abused its discretion when, without personally reviewing the videotape of the Willmore deposition, it adopted Stross' opinion that Willmore was of unsound mind at the time of her deposition and ruled on the issue of Willmore's competency.
The prosecution concedes that determination of the competency of a witness is a matter within the trial court's discretion. E.g., People v. Estorga, Colo., 612 P.2d 520 (1980); People v. Cunningham, 194 Colo. 198, 570 P.2d 1086 (1977); Howard v. Hester, 139 Colo. 255, 338 P.2d 106 (1959). It contends, however, that the court abused that discretion in relying on Stross' opinion because that opinion amounted to "no more than conjecture and speculation and is not a competent basis for opinion evidence." Daugaard v. People, 176 Colo. 38, 43, 488 P.2d 1101, 1104 (1971). The prosecution points specifically to Stross' inability to say whether Willmore's condition was caused primarily by fatigue, traumatic neurosis, or an exacerbation of that neurosis as a result of the hypnotic interview. We find no merit in this argument.
Although Stross could not specify the primary cause of Willmore's unsound mind, or the relative importance of fatigue, traumatic neurosis and the hypnotic interview in creating this condition, such specificity of diagnosis is not required. Stross was able to give his opinion that Willmore was of unsound mind with a reasonable degree of medical certainty, and, consequently, the proscription of conjecture and speculation contained in Daugaard is simply inapplicable. See Daugaard v. People, supra, 176 Colo. at 43, 488 P.2d at 1103. Further, Stross did identify what he considered to be the causes of that condition. His refusal to allocate a percentage of responsibility to each of those causes at the request of the state does not indicate an unfounded opinion, but only a realistic recognition of the limits of psychiatric diagnosis.
The prosecution also argues that the trial court abused its discretion because it determined Willmore was incompetent without personally viewing the videotape of Willmore's deposition. It relies primarily upon People v. Coca, 39 Colo.App. 264, 564 P.2d 431 (1977), where the court of appeals held that the trial court abused its discretion in ruling, without conducting an examination of a witness, that the witness, formerly adjudicated insane, was competent to *1212 testify. We are unpersuaded by this argument.
The case of People v. Coca, supra, is distinguishable. There, the challenged witness was presumed incompetent because of a prior adjudication of insanity. There was no expert testimony presented on the witness' competency to testify, and the trial court did not examine the witness. Nevertheless, the trial court determined that the witness was competent, relying upon case files involving earlier court proceedings that did not establish either the witness' competency or return to sanity. The trial court's finding of competency on the basis of this evidence was held to be an abuse of discretion.
In contrast, there is sufficient evidence to support the trial court's ruling in this case. Stross' expert opinion was presented testifying to Willmore's incompetence as a witness, and the state did not present any expert testimony to the contrary. We see no reason to adopt a rule that would require the trial court to view the taped deposition under those circumstances. Further, this is not a case, as in Coca, where the witness was available for examination to determine her competency. The deposition was conducted for a different purpose, and the court's decision to rely upon a qualified expert to assess Willmore's competence rather than drawing its own inferences from review of the videotape does not constitute an abuse of discretion.
Although a witness is presumed competent, People v. Trujillo, 40 Colo.App. 220, 577 P.2d 297 (1978), overruled on other grounds, People v. Chavez, Colo., 621 P.2d 1362 (1981); People v. Coca, supra; see Williams v. People, 157 Colo. 443, 403 P.2d 436 (1965), there is sufficient evidence to support the trial court's finding and it will not be disturbed on review.

C.
Finally, we do not reach the question of whether the trial court erred in ruling that Willmore's deposition testimony was inadmissible because her refusal or inability to answer certain questions constituted a denial of the defendant's right to be confronted by the witnesses against him. Since Willmore was statutorily incompetent to testify, section 13-90-106(1)(a), C.R.S.1973, discussion of the constitutional issue raised by the trial court's ruling is unnecessary, and we express no view on that matter.
The rule to show cause is discharged.[1]
ERICKSON and ROVIRA, JJ., dissent.
ERICKSON, Justice, dissenting:
I respectfully dissent to part IIB of the majority opinion and join Justice Rovira in his dissent. I write separately in order to set forth in greater detail the view that the evidence adduced at the competency hearing on January 6, 1982, was insufficient, as a matter of law, to rebut the presumption that Willmore was competent to testify as a witness in this case.
I agree with the conclusion of the majority that the psychiatrist's inability to specify either the primary cause of Willmore's mental condition or the relative importance of fatigue, traumatic neurosis, or the hypnotic interview in creating her condition does not indicate that the expert opinion was unfounded. In my view, however, the psychiatrist's conclusion as to Willmore's mental condition was itself insufficient to support a determination that she was incompetent to testify as a witness due to unsound mind. It is undisputed in the record that neither *1213 the examining psychiatrist nor the trial judge had an opportunity to personally observe Willmore at any time prior to the competency hearing. The psychiatrist's conclusion that Willmore was of unsound mind was rendered after a mere four-hour review of segments of the videotape and a transcript of Willmore's deposition; the audio recording and transcript of a prior hypnotic interview of Willmore; a transcript of the defendant's preliminary hearing at which Willmore appeared as a witness; and various other materials such as police interviews and reports, and articles appearing in medical journals. The psychiatric expert testified that, ideally, he would have desired a personal interview with Willmore in which he could systematically test her memory. His testimony also disclosed that, in reaching his conclusion that Willmore was not of sound mind, he primarily relied upon the written transcript of the videotaped deposition and upon audio tapes which he listened to in his car. The psychiatrist only viewed portions of the videotape because he "wasn't about to spend five hours watching it." The trial judge apparently did not examine, in whole or in part, the videotaped deposition of Willmore in order to personally observe her demeanor, but ruled that the presumption of competency was overcome solely on the basis of the psychiatrist's conclusion that Willmore was of unsound mind.
A fine line exists between competency of a prospective witness to testify and the credibility of that witness' testimony. Both fatigue and traumatic neurosis are not, in my view, psychological conditions which necessarily preclude a witness from being competent to testify. So long as the witness can satisfy the traditional competency requirements of accurate observation, recollection, and reporting of events at trial, the credibility of the witness and the weight to be given to his or her testimony is a matter for determination by the trier of fact. In view of the minimal factual basis in the record to show Willmore's competency as a witness, and without an independent review of the videotape by the trial judge, I believe that the trial court abused its discretion in determining that the evidence was sufficient to rebut the presumption of compentency in this case.
Justice ROVIRA joins me in this dissent.
ROVIRA, Justice, dissenting:
I respectfully dissent. The majority holds that the trial court did not abuse its discretion in suppressing the video tape deposition of Kennette Ann Willmore. I disagree.
Prior to being allowed to testify in a court of law, a witness must meet minimal competency requirements. In Colorado, the legislature has provided that "[p]ersons who are of unsound mind at the time of their production for examination" shall not be witnesses. Section 13-90-106(1)(a), C.R.S.1973. The test for competency applied in this jurisdiction under the "unsound mind" standard provides that one who is capable of observing, recollecting, and communicating facts and who appreciates the obligation to tell the truth may testify. People v. Estorga, Colo., 612 P.2d 520 (1980); Marn v. People, 175 Colo. 242, 486 P.2d 424 (1971); Howard v. Hester, 139 Colo. 255, 338 P.2d 106 (1959). See C. McCormick, Handbook of the Law of Evidence § 62 (E. Cleary 2d ed. 1972).
It is well established that the determination of the competency of a witness is a threshold question of law which is placed within the sound discretion of the trial court. People v. Estorga, supra; Johnson v. People, 171 Colo. 505, 468 P.2d 745 (1970); Howard v. Hester, supra. The ruling of the trial court will not be disturbed absent an abuse of discretion.
In determining whether a person is competent to testify, however, it must be remembered that every person is presumed competent, and the burden is on the challenging party to show that the witness comes within the purview of the statutory exceptions to the competency rule. See Williams v. People, 157 Colo. 443, 403 P.2d 436 (1965). Further, this court has stated that a witness should not be found incompetent to testify because of mental incapacity unless the evidence is clear and conclusive. Howard v. Hester, supra. See also Terry v. *1214 O'Neal, 194 Md. 680, 72 A.2d 26 (1950); Tumminello v. State, 10 Md.App. 612, 272 A.2d 77, cert. denied, 404 U.S. 948, 92 S.Ct. 276, 30 L.Ed.2d 264 (1971) (proof of insanity must be clear and conclusive in order to overcome presumption that witness was sane at time of testimony).
Several factors dictate that a court should suppress testimony of a witness on the basis of unsound mind only in extreme situations. First, while the threshold determination of competency is for the court, questions of credibility of a witness and the weight to be given testimony are for the jury. Johnson v. People, supra. Considerations before the court in a hearing to determine competency are often not easily distinguished from those which properly should be left to the jury when assessing credibility and weighing evidence. See Howard v. Hester, supra. Accordingly, the court must be cognizant of the real possibility of infringing upon the province of the jury.
Further, the truth-finding process is better served by allowing testimony to be presented to a jury along with evidence of any infirmities which may affect the credibility of the witness or the weight to be given the testimony. See Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918); 2 J. Wigmore, Evidence § 501 (J. Chadbourn rev. 1979) (discussing the modern trend refusing to distinguish between incapacity as it affects credibility and incapacity which excludes the witness and, instead, allowing the jury to assess the impeached testimony and glean whatever traces of truth contained therein).
The Federal Rules of Evidence have adopted a rule which does not specify a standard for determining mental competency. Fed.R.Evid. 601. See United States v. Roach, 590 F.2d 181 (5th Cir. 1979) (suggesting that under Rule 601 mental capacity is no longer a ground of incompetence). Rule 601 provides, in part, "Every person is competent to be a witness except as otherwise provided in these rules." The Advisory Committe's Note to Rule 601 adopts the rationale of the commentators supporting the modern trend. "A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence."[1]
In Colorado, however, C.R.E. 601 provides that "Every person is competent to be a witness except as otherwise provided in these rules, or in any statute of the State of Colorado." (emphasis added). Thus, the "unsound mind" competency standard of section 13-90-106(1)(a), C.R.S. (1973) continues to provide the rule of law in Colorado.
Nonetheless, a court should not exclude the testimony of a witness because of unsound mind unless it appears that the witness' capacity is such that it would not be worthwhile to hear him and "his capacity to observe, remember, and recount, [is] such that he can ... bring [no] added knowledge of the facts." C. McCormick, Handbook of the Law of Evidence § 62 at p. 140 (E. Cleary 2d ed. 1972). In all other cases, if the witness can add any light on the facts in question and if he can appreciate the obligation to be truthful, the court should allow the witness to relate his observations to the best of his ability. Any infirmities can be made apparent through cross-examination, and the jury can assess weight and credibility accordingly.
With the foregoing in mind, I now turn to the challenge presently before the court. The People contend that the court abused its discretion by adopting the opinion of the expert witness and ruling on the issue of competency without having reviewed all the evidence available, particularly the video deposition; and that the evidence was insufficient to overcome the presumption of competence.
The People allege, and it is not denied, that the trial court never viewed the video *1215 tape deposition which it ordered suppressed. Accordingly, I accept the allegation as being true.
Generally, a determination of competency of a witness should be made only after a voir dire of the witness has been conducted by the court or by counsel in the presence of the court. See Shuler v. Wainwright, 491 F.2d 1213 (5th Cir. 1974); Henderson v. United States, 218 F.2d 14 (6th Cir. 1955). See also People v. Coca, 39 Colo.App. 264, 564 P.2d 431 (1977). In the present case, the witness was unavailable for a competency hearing. However, the video tape deposition displaying the witness taking an oath, acknowledging her presence at the scene of the alleged crime, and testifying concerning her memory of the events in question was available to the trial court.
In the absence of an opportunity to voir dire the witness as to her competency, the video tape offered the only indicia of the witness' demeanor on the witness stand. Certainly, this evidence, in itself, is relevant in showing the witness' ability to appreciate the obligation to tell the truth, her ability to recollect the event in question, and her ability to communicate.[2]
I believe that the failure to consider relevant evidence constitutes an abuse of discretion. See Spann v. People, 193 Colo. 53, 561 P.2d 1268 (1977). These are determinations which must be made by the trial court; I do not believe that the court can simply ignore evidence and rely, instead, upon an expert.
Accordingly, I would remand the case to the trial court along with an order to view the video deposition. The court should then reconsider its prior ruling in light of all of the evidence available to it.
I am authorized to say that Justice ERICKSON joins in this dissent.
NOTES
[1] The trial court's ruling leaves open the question whether Willmore will be competent to testify at trial if she is available. In its written order the trial court determined only that, "At the time she gave her deposition the witness, Kennette Ann Willmore, was of unsound mind..." (Emphasis added.) Further, prefacing its oral ruling at the close of the hearing, and in response to defense counsel's statement that "[i]t's inconceivable [Willmore] will be able to testify [at trial]," the trial court noted, "It's not inconceivable she should be allowed to testify. The question is whether or not we use the deposition." We also note that Dr. Stross testified at the hearing that, based upon the materials he had reviewed, he considered Willmore a "good candidate" for therapy and that, through treatment, she could become of sound enough mind that she could testify.
[1] Commentators have suggested that a witness totally lacking in capacity is difficult to imagine and "that each witness' testimony [should] be taken for what it seems to be worth." 3 J. Weinstein, Weinstein's Evidence ¶ 601 [03] (1981), quoting 2 J. Wigmore, Evidence § 493 (3d ed. 1940). See C. McCormick, Handbook of the Law of Evidence § 62 (E. Cleary 2d ed. 1972).
[2] The video tape deposition was offered into evidence by the defendant. The exhibit was entered into evidence and was before the court in the competency hearing.