**The People of the State of Colorado ex rel. Martin D. Buckley, Special Prosecutor v. Charles A. Beck**
### No. 79SA453
### The People of the State of Colorado v. Charles A. Beck

(610 P.2d 1069)

Decided May 12, 1980.                    Rehearing denied June 2, 1980.

Martin D. Buckley, Special Prosecutor, for complainant in 79SA452.

Robert B. Kane, Disciplinary Prosecutor, for complainant in 79SA453.

Myers, Woodford & Hoppin, P.C., Frederick J. Myers, for attorney-respondent in 79SA452 and 79SA453.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

The respondent, Charles A. Beck, was suspended by the United States Court of Appeals for the Tenth Circuit for his failure to perfect an

appeal and protect the rights of his clients. Two additional complaints to the Supreme Court Grievance Committee culminated with findings, conclusions, and a recommendation for disbarment. We approve the recommendation and order that the respondent's name be stricken from the roll of attorneys authorized to practice before this Court. The respondent is also foreclosed from applying for readmission for a period of eight years, and then may only submit an application for admission in accordance with the conditions set forth in this opinion.

### Count I.

The respondent, as a practicing lawyer, professed to have expertise in the field of bankruptcy. His client consulted him after he was adjudicated a bankrupt. His client owed the Bank of Boulder more than $27,000 and the note was overdue, but the bank was prepared to extend additional credit to him so that he could secure the return of his business. His client formerly operated a pharmacy in Greeley, Colorado, and the bank's only hope for payment was to loan the client additional funds to enable him to reopen his pharmacy. A loan of $7,500 was made and the funds were paid to the respondent to be held in trust. The respondent was to use the funds for the sole purpose of securing the return of his client's inventory at the pharmacy from the trustee in bankruptcy.

The trustee in bankruptcy would have sold the personal property and inventory of the pharmacy for a nominal price, but was not offered any specific sum by the respondent. Instead, the funds were used for the respondent's own personal benefit and certain sums were improperly advanced to the respondent's client. When the bank discovered that the trust had been breached, demand was made for payment of the $7,500 and judgment was eventually secured against the respondent, who stated that he had no intention of paying the judgment. The testimony of the bank officers, which the Grievance Committee accepted as true, was that the check issued as a result of the loan was not to be cashed by the respondent unless the pharmacy inventory was repurchased.

The respondent was guilty of dishonesty, deceit, and misrepresentation in his dealing with counsel for the bank and in his handling of funds given to him in trust. DR 1-102(A)(4). He also attempted to conceal his fraud by not responding to a motion to produce. DR 1-102(A)(5). His failure to segregate the funds given to him in trust violated DR 9-102(A). Moreover, his failure to account to the bank adds to his misconduct. DR 9-102(B)(3). The respondent ignored the Code of Professional Responsibility and breached a trust relationship which he had with his client and with the Bank of Boulder when he misappropriated funds which were given to him in trust. *See* DR 1-102(A)(1), (4) and (5), DR 9-102(A) and DR 9-102(B)(2), (3) and (4), and Rule 241(B), C.R.C.P.

*Count II.*

A second count in the grievance proceedings also reflects the respondent's total disregard for his professional obligations. The respondent agreed to file a collection case for a New York lawyer and was successful in obtaining the funds which were owed to his client. Thereafter, he did not pay the funds or make an accounting to his client. Instead, he intermingled the funds with his own funds and misrepresented the status of the case to the referring attorney to conceal the fact he had failed to remit the funds to his client.

The respondent's misconduct commenced with his failure to preserve the identity of the client's funds. DR 9-102(A). Thereafter, he did not notify his client of the receipt of the funds that he obtained on his client's behalf. DR 9-102(B)(1). He also failed to place his client's funds in a safe place, instead, hiding the cash which he had obtained in his furniture. His failure to maintain complete records further condemns his professional service. DR 9-102(B)(3). His election to not deliver the funds to his client when they were received is contrary to DR 9-102(B)(4). All of the respondent's conduct is contrary to the highest standards of honesty, justice, and morality required by Rule 241(B), C.R.C.P.

The respondent's sole defense for his derelictions of duty and professional responsibility was that he had mental problems. He has attempted to conceal his misconduct from both his clients and the Grievance Committee. In fact, his conduct before the Grievance Committee demonstrates his recognition of his professional derelictions and indicates that his primary aim was to subvert the truth. His psychiatric problems, which were alluded to from time to time, did not amount to a real defense and were not raised to a level that could possibly excuse or mitigate his conduct. As we said in *People v. Harthun,* 197 Colo. 1, 593 P.2d 324, 326 (1979):

"DR 9-102(A) and DR 9-102(B)(3) require as a minimum standard of conduct that a lawyer segregate his clients' funds from his own and keep them in identifiable bank trust accounts. He must also keep and maintain complete records of all such funds and be prepared to account to his client for the funds at all times. Most importantly, he cannot employ those funds to meet his own personal expenses. Misuse of such funds strikes at the heart of public confidence in the legal profession and requires the most severe punishment."

In this case, the respondent's breach of fiduciary duties is sufficient to warrant disbarment. *People v. Roads,* 180 Colo. 192, 503 P.2d 1024 (1972).

In our view, the respondent's conduct not only warrants but requires disbarment and we therefore order that the respondent's name be stricken from the roll of attorneys authorized to practice before the Supreme Court of Colorado. We also foreclose an application of readmission for a period of eight years. *People v. Radinsky,* 182 Colo. 259, 512 P.2d 627 (1973);

*People v. Radinsky,* 176 Colo. 357, 490 P.2d 951 (1971). *See* 6.2 *American Bar Association Standards for Lawyer Discipline and Disability Proceedings.*[1] Any application for readmission will be dependent upon a showing by clear and convincing evidence that the respondent has been rehabilitated and is competent to practice law. *Segretti v. State Bar of California,* 15 Cal.3d 878, 544 P.2d 929, 126 Cal. Rptr. 793 (1976). Under the circumstances of this case, he must comply with the admission standards of Rule 202 and Rule 209, C.R.C.P. In short, if the respondent seeks to be readmitted, he must first demonstrate to the Supreme Court Grievance Committee that rehabilitation has occurred and that he is entitled to start anew. Thereafter, with one exception, the respondent would be required to take the same steps to secure admission that any other applicant would in the first instance, including successfully passing the bar examination. If the Supreme Court Grievance Committee is satisfied that rehabilitation has occurred, it would not be necessary for the respondent to again satisfy the Bar Committee that he has the ethical qualifications which would entitle him to be member of the bar of the Supreme Court of Colorado.

Accordingly, the respondent is disbarred and his name is ordered stricken from the rolls of this Court. Costs in the amount of $951.15 are assessed against the respondent and the respondent is ordered to make payment to the Clerk of the Supreme Court within one year. Readmission may occur, if at all, on compliance with the terms and conditions of this opinion.

---

[1] "6.2 *Disbarment — Readmission.* The court has exclusive power to readmit a disbarred lawyer.
The lawyer should not be able to apply for readmission until at least five years after the effective date of disbarment and should not be readmitted unless he can show by clear and convincing evidence: rehabilitation, fitness to practice, competence and compliance with all applicable discipline or disability orders and rules."