**The PEOPLE of the State of Colorado, Complainant,**

v.

**Charles D. FAGAN, Attorney-Respondent.**

**No. 87SA162.**

Supreme Court of Colorado, En Banc.

Nov. 16, 1987.

**250**

George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Charles D. Fagan, Aspen, pro se.

MULLARKEY, Justice.

In this attorney discipline case, a hearing panel of the Supreme Court Grievance Committee has recommended that the respondent, Charles D. Fagan, be suspended from the practice of law for a period of one year and one day; that, as a condition of reinstatement, the respondent be required to undergo a psychiatric evaluation; and that the costs of the proceedings be assessed against him. We accept the recommendations of the panel.

## I.

The disciplinary recommendation results from four disciplinary cases against the respondent spanning approximately four and one-half years of his practice. From the evidence before it, the hearing board found a "predominant and clear pattern" of neglect and inattention by the respondent to the affairs of his clients and himself. The board found that Fagan repeatedly ignored his clients' requests for information, court orders for discovery, and inquiries from the Grievance Committee.

Fagan has been admitted to practice in Colorado since 1976 and has been in solo practice in Aspen since 1979. According to his testimony, he has developed a subspecialty in the area of collection law. The matters which led to this disciplinary action were collection-related.

## A.

In the first case, Fagan took approximately eight months to provide a requested status report regarding a collection claim in which he represented a creditor, Shawnee Southwest. The client made four written requests and several telephone requests for the status report and, although the respondent verbally indicated that he would provide a report, he did not do so until after a grievance was filed. In the same case, Fagan delayed in responding to the Grievance Committee's requests despite the fact that he was notified that his response was overdue on two separate occasions.

## B.

In the second case, Fagan was retained by a Chicago law firm to defend its client, the Xerox Corporation, in a suit brought against Xerox and to prepare a counterclaim for unpaid lease fees for a copier. The respondent was paid a retainer and later was paid an additional fee, both in the amounts he requested. Fagan sent the Chicago law firm copies of the answer, counterclaim and crossclaims which he had filed on behalf of Xerox and gave a written analysis of the case and his proposed strategy. During the next eighteen months, however, the Chicago law firm made seven written requests for a status report from the respondent without receiving any reply. The status report was finally obtained through the assistance of The Commercial Bar, which had provided the referral ser-

vice in this matter. The respondent was informed by the Chicago law firm that the report was not sufficient and that a full and complete report was requested. At a subsequent telephone conference, Fagan promised to provide a detailed written report. Despite repeated follow-up inquiries by letter and telephone, no such report was ever received.

In the Xerox litigation, the respondent encountered difficulties responding to the opposing party's discovery requests. Fagan testified that he received one extension of time and believed that he had received another informal extension of time from his opposing counsel. The informal extension of time was not reduced to writing and the opposing counsel filed for entry of default when the discovery responses were a month overdue. The trial court denied the motion for entry of judgment by default but ordered Xerox to file the responses and to pay the plaintiffs' attorney's fees incurred in connection with the motion. Fagan complied with the court orders and paid the attorney's fees ordered by the court with his own funds. He did not advise his client of the motions or of the court's order.

### C.

In the third case, the Grievance Committee sent Fagan a copy of a request for investigation in a complaint alleging that the respondent had neglected a legal matter entrusted to him. Fagan failed to respond to the committee's inquiry. Although this case was ultimately dismissed as not warranting further action, Fagan failed to cooperate with the Grievance Committee and to comply with its procedures.

### D.

The fourth case considered by the Grievance Committee involved two separate collection actions referred to him by collection agencies. In the first matter, Fagan requested and received a retainer plus costs in order to initiate litigation on behalf of a creditor, the Justin Boot Company. Despite four written requests for status reports, Fagan neither responded nor filed suit until ten months after he had been retained. In the eighteen months after he filed suit, Fagan received monthly requests for written reports on the status of the case. He made only three responses to those requests.

The hearing board found that the respondent felt stymied in the litigation by a court order granting a defendant's motion for a cost bond without specifying the amount of the bond. Fagan discussed this matter with the court clerk but failed to take any formal action to seek clarification or to otherwise advance the case. The board found that Fagan let the matter languish and failed to contact his client concerning this issue. Twenty-three months after Fagan had been retained, the collection agency wrote to him indicating that the client wished to proceed in the most simple manner and requested a discussion with the respondent. Despite seven more letters from the collection agency, Fagan failed to respond. The court file indicates Fagan took no action in the case since the first year after it was filed.

In the second matter considered by the Grievance Committee in this case, Fagan was retained through a collection agency to collect a debt owed to the S.M. Hexter Company. Attorney's fees and court costs in the amounts requested by Fagan were forwarded to him and he filed suit. Despite numerous letters and telephone calls requesting status reports, the respondent failed to contact the collection agency until eight months after the suit was filed when he sent the creditor and the collection agency copies of the pleadings. Although four additional written requests were made for status reports, the respondent provided no further information.

In the underlying suit, Fagan failed to answer interrogatories and to produce documents, resulting in a court order awarding the debtor its attorney's fees and costs. After Fagan failed to comply with the court order, the debtor moved to dismiss the suit. The court denied the motion to dismiss but assessed attorney's fees against both the respondent and his client, jointly and severally. Fagan failed to obey

that court order and another motion to dismiss was filed. The court issued a contempt citation for the respondent to appear and, after he paid the attorney's fees out of his own funds, the contempt hearing was vacated. Eighteen months after the suit had been filed, the debtor again filed a motion to dismiss with prejudice for failure to prosecute and the case was dismissed.

The hearing board rejected Fagan's statement in mitigation in which he asserted that no harm was done to the client because he paid the attorney's fees assessed by the court and he justified his failure to prosecute the case on grounds of difficulties of proof. The hearing board noted Fagan contacted neither the client nor the collection agency regarding his decision to allow the case to be dismissed for failure to prosecute and, thus, the client did not have an opportunity to evaluate the difficulties of the litigation or to seek other counsel to pursue the matter.

The hearing board also found that the respondent had failed to respond to the Grievance Committee's request for investigation. Two separate defaults were entered against the respondent in this Grievance Committee case because of his failure to answer or otherwise respond to the complaint. The respondent persuaded the board to set aside the first default but again failed to answer or to defend the complaint in any way.

## II.

The hearing board found by clear and convincing evidence that the respondent neglected legal matters entrusted to him by Shawnee Southwest, Xerox Corporation, Justin Boot Company and S.M. Hexter Company. It also found that the respondent had prejudiced and damaged his clients during the course of his professional relationship in the cases entrusted to him by S.M. Hexter Company and the Justin Boot Company. The board also found that, in two cases, the respondent had violated C.R.C.P. 241.6(7) by failing to respond to Grievance Committee requests.

In considering aggravating and mitigating circumstances, the board found that, although the respondent had occasional bursts of diligence, his conduct had deteriorated during the four-and-one-half-year time span covered by these cases. The board also observed that the respondent failed to take responsibility for his actions and attempted to blame others for his wrongdoing. The board found that the respondent was mentally competent to proceed with the disciplinary proceedings but, based on its observations of him at two hearings, the board recommended that Fagan be given a psychiatric evaluation prior to being permitted to return to practice. Finally, the board recommended that Fagan be suspended from the practice of law for a period of one year and one day and that costs be assessed against him.

The findings of fact and recommendations of the hearing board were unanimously adopted by a hearing panel of the Grievance Committee and forwarded to this court. The respondent filed exceptions in this court which were stricken in part because of his failure to file a transcript. The People agreed that Fagan's exceptions to the requirement of a psychiatric evaluation prior to reinstatement were properly before us and those exceptions were not stricken. Although the respondent was given additional time to file a brief, he did not respond.

## III.

Fagan's conduct violated C.R.C.P. 241.-6(1) (any act or omission which violates the provisions of the Code of Professional Responsibility) and 241.6(7) (failure to respond to a request by the Grievance Committee). The respondent violated the Code of Professional Responsibility DR 1-102(A)(1) (violation of a disciplinary rule), DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), DR 1-102(A)(5) (conduct prejudicial to the administration of justice), DR 1-102(A)(6) (conduct adversely reflecting on fitness to practice law), DR 6-101(A)(3) (neglect of a legal matter), DR 7-101(A)(2) (failure to carry out a contract of employment for professional services), and DR 7-101(A)(3) (dam-

age to the client during the course of the professional relationship).

■ Suspension is an appropriate sanction in this case because the respondent has engaged in a pattern of neglect and caused injury to his clients. ABA Standards for Imposing Lawyer Sanctions, Standard 4.42; *People v. May*, 745 P.2d 218 (Colo.1987). Several aggravating factors are present here including a pattern of misconduct involving multiple offenses, the respondent's intentional failure to cooperate with the Grievance Committee's orders, the respondent's failure to acknowledge the wrongful nature of his conduct, and the respondent's substantial experience in the practice of law including his claimed expertise in collection law. ABA Standards for Imposing Lawyer Sanctions, Standard 9.22. Although we note that the respondent did not have a prior disciplinary record, we do not find this to be a mitigating factor because the offenses dealt with in this case occurred over four and one-half years, which represent more than one-third of the respondent's total time in practice. We find the proposed suspension for a period of one year and one day to be appropriate.

## IV.

■ The Committee also recommends that the respondent undergo a psychiatric evaluation as a condition of reinstatement to practice. This recommendation is based on the respondent's erratic behavior which we find was manifested, in part, by his conduct of the cases leading to the disciplinary action and, in part, by his conduct during the disciplinary proceedings. The hearing board observed that, at times, Fagan performed normally and effectively but, at other times, he functioned without noticeable expression or affect and was rambling and disorganized. There also is evidence in the record that the respondent exhibited threatening conduct toward the deputy disciplinary prosecutor.

■ In his exceptions, the respondent contends that the Grievance Committee failed to follow the proper procedures before recommending that a psychiatric evaluation be made a condition of reinstatement. Although he does not cite to any section of the rules, his contention appears to be based on C.R.C.P. 241.19(c) regarding the transfer of an attorney to disability inactive status following a hearing. That rule provides that an interested party may petition the Supreme Court to determine whether a lawyer is incapable of continuing to practice law by reason of physical, mental or emotional infirmity or illness, including addiction to drugs or intoxicants. Upon receiving such a petition, this court must afford the lawyer an opportunity to show cause why an examination by a qualified medical expert designated by the court should not be ordered. Admittedly the procedures of C.R.C.P. 241.19(c) have not been followed in this case. However, because neither Fagan nor the Grievance Committee has asked that he be transferred to disability inactive status, we find that those procedures are inapplicable.

■ Fagan next argues that a psychiatric evaluation cannot be made a condition of his reinstatement unless he first is given a psychiatric examination and he has an opportunity to contest any resultant findings. He supports his argument with affidavits from a psychotherapist and a clinical social worker. Neither of the affiants has treated the respondent professionally but each has been acquainted with him for the past ten years. Both dispute any suggestion that the respondent has a serious mental disorder. We do not agree with the respondent's contention.

The conditions for reinstatement following a suspension of longer than one year are set forth in C.R.C.P. 241.22(c). Subsection 3 provides that the petition for reinstatement must set forth:

The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that he possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully

considering the previous disciplinary action taken against him....

The qualifications for admission to the Bar require, among other things, that applicants demonstrate that "they are mentally stable and morally and ethically qualified for admission." C.R.C.P. 201.6(1). Rule 201.6(2) provides that further evidence of the applicant's mental stability and moral and ethical qualifications may be required prior to admission "including a current mental status examination."

Thus, C.R.C.P. 241.22(c) and C.R.C.P. 201.6, when read together, authorize us to order a psychiatric evaluation as a condition of reinstatement. Under the circumstances of this case, we find that it is appropriate to do so. *See People ex rel. Buckley v. Beck*, 199 Colo. 482, 610 P.2d 1069 (1980).

## V.

Accordingly, we order the suspension of the respondent from the practice of law for a period of one year and one day following the date of this order. The respondent may petition for reinstatement after suspension pursuant to C.R.C.P. 241.22(c) and, in addition to meeting the other requirements stated in that subsection, the respondent must undergo a psychiatric evaluation and demonstrate his mental stability to practice law. The respondent is also ordered to pay costs of $1,420.90 in this matter. Such costs shall be payable within thirty days of this order to the Supreme Court Grievance Committee, 600 17th Street, Suite # 500 S, Denver, Colorado 80202.