**The PEOPLE of the State of Colorado, Complainant,**

v.

**Charles Douglas FAGAN, Attorney–Respondent.**

**No. 90SA138.**

Supreme Court of Colorado, En Banc.

May 29, 1990.

Linda Donnelly, Disciplinary Counsel, and George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Cooper & Kelley, P.C., Paul D. Cooper, Denver, for attorney-respondent.

PER CURIAM.

In this disciplinary proceeding we consider four consolidated cases involving respondent Charles Douglas Fagan. The Inquiry Panel of the Supreme Court Grievance Committee (the Panel) approved a Stipulation, Agreement and Conditional Admission of Misconduct (the stipulation) jointly submitted by the respondent and the disciplinary counsel. The stipulation recommends that the respondent be suspended from the practice of law for a maximum of two years. The respondent requests no more than a six-month suspension. The Panel recommended that the respondent be disciplined by a suspension of six months, and that he be assessed the costs of these proceedings. We reject the recommended discipline and order that the respondent be suspended from the practice of law for two years and that he pay the costs of these proceedings.

I.

This case arises out of four complaints filed by the disciplinary counsel against the respondent. The respondent was admitted to the bar of the Supreme Court of the State of Colorado on October 21, 1976, and is therefore subject to the jurisdiction of this court and its Grievance Committee.

A. Case No. 87B-67

The complaint in case number 87B–67 alleges that the respondent was retained by Stephen G. Schilawski of Decatur, Illinois, to look into the foreclosure of a dry cleaning business in Colorado, and to initiate a damages suit arising out of the destruction of Mr. Schilawski's automobile. The complaint alleges that the respondent neglected the matter, failed to return his client's calls and correspondence, and failed to return the client's retainer fee. The stipulation notes that the charges underlying the grievance were dismissed. The respondent admits, however, that his failure to respond to and cooperate with the Grievance Committee in the matter violated C.R.C.P. 241.-6(7), 7A C.R.S. (Supp.1989).[1]

B. Case No. 87B–107

The complaint in case number 87B–107 alleges in count I that in 1985, John Neil Satre was charged by information with possession of cocaine, use of cocaine, and driving under the influence of drugs. The complaint alleges that Satre retained the respondent for a flat fee of $10,000.00, and initially paid the respondent $1,000.00. In the stipulation, the respondent denies that Satre retained him for a flat fee of $10,-000.00. The complaint alleges that the respondent entered an appearance and filed a waiver of extradition, a request for a preliminary hearing, and a request for disclosure. The respondent represented Satre at the preliminary hearing, filed a motion to suppress, and counseled Satre during plea negotiations. At Satre's request, the respondent moved for a continuance so out-of-state counsel, David Chesnoff, could enter an appearance as co-counsel. The respondent also requested the continuance so that he could have Satre undergo psychological testing. The respondent made several brief court appearances and participated in the suppression hearing before Chesnoff joined him on the case. Thereafter the respondent filed a motion to present evidence of Satre's impaired mental condition and moved to have Satre independently tested. The respondent and Chesnoff prepared a petition for a writ of prohibition or mandamus and filed it with this court. On March 6, 1985, the first day of trial, the respondent announced that his

1. C.R.C.P. 241.6 provides that:
   Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:
   . . . .

   (7) Failure to respond to a request by the Committee without good cause shown or obstruction of the Committee or any part thereof in the performance of its duties. Good cause includes, but is not limited to, an assertion that a response would violate the respondent's constitutional privilege against self-incrimination.

client and the People had agreed to enter into a plea bargain. Satre pleaded guilty to the amended count of possession, and all other counts were dismissed.

As of March 15, 1986, Satre had paid the respondent $2,612.50. The respondent continually sent monthly, itemized statements which, by November 1, 1986, totalled $27,307.83. On August 2, 1986, Satre assigned to the respondent his right, title, and interest in a promissory note in the amount of $45,000.00. On December 10, 1986, the respondent sued Satre for his claimed fee of $27,307.83.

Count II of the complaint alleges that the respondent failed to respond to or cooperate with the Grievance Committee, in violation of C.R.C.P. 241.6(7).

The stipulation states that the allegations in the complaint that the respondent charged an excessive fee cannot be proven. The respondent asks that that charge be dismissed. The respondent admits, however, that because of his failure to answer the Grievance Committee's request for an investigation the excessive fee allegation was deemed admitted.

### C. Case No. 87B–117

In the stipulation, the respondent admits the allegations contained in counts I and II of the complaint in case number 87B–117. The complaint arises out of a suit commenced in August of 1984 by John R. Evla against John P. Russell for damages Evla sustained in an automobile accident near Aspen, Colorado. In March of 1985, Evla named Coastland Ventures, a California corporation, as a co-defendant in the lawsuit based on allegations that Coastland owned the car driven by Russell. Coastland retained the respondent to represent it and Russell, and paid a $700.00 retainer fee to the respondent.

Due to the respondent's failure to answer the plaintiff's discovery requests the trial court entered a default judgment in the plaintiff's favor. The trial court then scheduled and held a damages hearing, which the respondent did not attend. In 1986 the trial court entered judgment against the defendants in the amount of $667,951.12. The respondent did not notify the defendants or their California attorneys of any of the events leading up to the entry of the default judgment. The defendants and their California attorneys remained unaware of the judgment until it was registered in California in May of 1986. Coastland Ventures has since retained another law firm, and has incurred substantial fees in attempting to set aside the default judgment. The stipulation establishes that the foregoing conduct by the respondent violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 6–101(A)(3) (neglect of a legal matter), DR 7–101(A)(1) (failure to seek lawful objectives of the client through reasonably available means permitted by law), DR 7–101(A)(2) (failure to carry out a contract of employment entered into with a client for professional services), and DR 7–101(A)(3) (prejudicing or damaging a client during the course of a professional relationship).

Count II of the complaint alleges that the respondent failed to respond to or cooperate with the Grievance Committee, in violation of C.R.C.P. 241.6(7).

### D. Case No. 88B–29

The complaint in case number 88B–29 alleges that the respondent represented Roy Key, who purchased 200 acres of land near Snowmass, Colorado; from Cecelia Spear and her mother, Helen Ogden McCoy. The respondent assumed responsibility for handling many of the details of the transaction. The respondent sent a letter to Spear in which he stated he was forwarding warranty deeds for her signature, a settlement sheet, a copy of the mortgagee's title insurance policy, copies of the promissory note and deed of trust, and other closing documents. The respondent promised in the letter that he would record the deed of trust and forward it and the promissory note to either Spear or McCoy. The respondent failed to record the Spear–McCoy deed of trust during the subsequent six years, and never delivered the original promissory note to Spear or any of the other beneficiaries. Thus nei-

ther Spear nor McCoy ever received a purchase money deed of trust.

The respondent later represented Key in a sale of a portion of the property to Anthony George, who, in return for the sale, took a purchase money deed of trust. Spear became aware of the second sale four years later when she received notice of a public trustee's foreclosure sale on George's deed of trust. Spear then retained Leonard Oates as counsel. The respondent promised Oates that he would record the Spear–McCoy deed of trust with a subordination document certifying that Key intended the transfer to George to be subject to the Spear–McCoy deed of trust. Despite having made this promise, the respondent recorded the deed of trust from the second sale before recording the Spear–McCoy deed of trust, thus subordinating Spear's and McCoy's interest to the interest of George. The respondent also escrowed $53,000 of the loan proceeds from the sale to George with the company which provided George with the loan.

For approximately the next two months the respondent, who represented Key, and Oates, who represented McCoy, attempted to resolve the dispute brewing over the parties' conflicting claims to their rightful interest in the property. Oates repeatedly insisted that the respondent deliver the promissory note to his client, and, despite every indication to the contrary, the respondent repeatedly insisted that he had already done so. The dispute was quickly resolved when Key terminated the respondent's services and retained different counsel. In the final settlement, Key issued a substitute promissory note, the escrowed loan proceeds were used to pay Spear her share of the note, and Spear executed a partial release of her deed of trust on the portion of the property sold to George and encumbered by the title company.

In the stipulation, the respondent admits the allegations in the complaint. The stipulation states that the charges of dishonesty cannot be proved and are therefore dismissed. However, in the stipulation the respondent admits that his conduct violated

C.R.C.P. 241.6 and DR 6–101(A)(3) (neglect of a legal matter).

### E. Prior Discipline

The respondent received a letter of admonition on June 8, 1983. On November 16, 1987, we suspended the respondent for a year and a day based on a "predominant and clear pattern" of neglect and inattention by the respondent to his affairs and the affairs of his clients over a period of more than four years. *See People v. Fagan,* 745 P.2d 249, 252 (Colo.1987). The respondent has not been reinstated as an active member of the bar of this court.

### F. Mitigation

In his statement in mitigation the respondent admits that in the past he dealt with stressful situations by withdrawing from them, and that his withdrawal from a number of stressful situations in his life severely worsened them. The respondent states that he has learned to take responsibility for all aspects of his life, and that he now maintains a renewed commitment to serve the interests of his clients. The respondent has submitted twelve letters of support from business associates, personal acquaintances, and former clients which attest to his ability to behave in a professional manner.

### II.

The stipulation establishes that the respondent caused damage and prejudice to his clients by neglecting matters entrusted to him, that he sacrificed the interests of one client in order to further the interests of another, and that he failed to respond to or cooperate with the Grievance Committee.

The respondent's failure to respond to the Satre matter has resulted in the admission of allegations that he charged a criminal client an excessive fee. The respondent's neglect of the Coastland Ventures matter resulted in the trial court entering a default judgment against the respondent's client. The respondent's failure to record the Spear–McCoy deed of trust threatened Spear's and McCoy's interests and resulted

in the subordination of a part of Spear's and McCoy's property interests to a later purchaser. The respondent assumed a position of trust in relation to Spear and McCoy by assuming responsibility for handling the first transaction and by promising Spear and McCoy that he would deliver the promissory note and record the deed of trust. *See Howard v. Hester*, 139 Colo. 255, 261, 338 P.2d 106, 109 (1959). The respondent's neglect in this matter threatened, and caused damage to, Spear's and McCoy's interests. The damage to Spear's and McCoy's interests was not completely remedied by the subsequent settlement.

The stipulation establishes that the respondent's actions violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 6–101(A)(3) (neglect of a legal matter), DR 7–101(A)(1) (failure to seek lawful objectives of a client through reasonably available means permitted by law), DR 7–101(A)(2) (failure to carry out a contract of employment entered into with a client for professional services), and DR 7–101(A)(3) (prejudicing or damaging a client during the course of a professional relationship). The respondent's failure to respond to or cooperate with the Grievance Committee in the cases identified in this opinion violates C.R.C.P. 241.6(7).

Section 3.0 of the American Bar Association *Standards for Imposing Lawyer Sanctions* (1986) (hereinafter ABA *Standards*) provides:

> In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:
>
> (a) the duty violated;
>
> (b) the lawyer's mental state;
>
> (c) the potential or actual injury caused by the lawyer's misconduct; and
>
> (d) the existence of aggravating or mitigating factors.

Section 4.42 of the ABA *Standards* provides:

> Suspension is generally appropriate when:
>
> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

> (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

The respondent's continued neglect of matters entrusted to him, including his failure to deliver a promissory note to Spear and McCoy, and his failure to record the Spear–McCoy deed of trust, justify his suspension from the practice of law. *See People v. Yost*, 752 P.2d 542 (Colo.1988). The respondent's acceptance of a retainer from Coastland Ventures and his subsequent failure to litigate the matter also constitutes misconduct warranting· suspension. *See People v. Southern*, 638 P.2d 787 (Colo.1982). The respondent's misconduct is aggravated by his failure to cooperate with the Grievance Committee in these proceedings.

■ An attorney who seriously prejudices his clients by continuing to neglect matters entrusted to him is eligible for disbarment. *See People v. Wyman*, 769 P.2d 1076 (Colo.1989); *People v. Sanders*, 713 P.2d 837 (Colo.1985); *People v. Young*, 673 P.2d 1003 (Colo.1984). In this case we have adopted the Grievance Committee's recommendation that the respondent be suspended from the practice of law. Our decision is based in part on the respondent's statement admitting his problem and vowing to improve his performance, and the statements of various acquaintances of the respondent who attest to his ability to manage his affairs competently. However, we reject the Panel's recommendation that the respondent be suspended for six months. The facts of this case warrant the respondent's suspension for a period of two years. Although the respondent's recognition of his personal problems weighs in his favor, "[a]n attorney's personal problems ... cannot excuse his negligence or professional misconduct, for discipline is required not only to punish the attorney but also to protect the public." *People v. Morgan, Jr.*, 194 Colo. 260, 261, 574 P.2d 79, 81 (1977).

We order that the respondent, Charles Douglas Fagan, be suspended from the practice of law for two years commencing on the date of this opinion. The respondent is ordered to pay the costs of these

proceedings, $224.16, within 30 days of this Order to the Supreme Court Grievance Committee, 600—17th Street, Denver, Colorado, 80202. Prior to his reinstatement the respondent shall be required to comply with C.R.C.P. 241.22(c), 7A C.R.S. (Supp. 1989).

LOHR, J., does not participate.